**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Applicant-Plaintiff,

v.

SPONSORS FOR EDUCATIONAL OPPORTUNITY, INC.,

Respondent.

Miscellaneous Action

No. 26-mc-580

# MEMORANDUM OF LAW IN SUPPORT OF PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

I. PRELIMINARY STATEMENT .......... 5

II. STATEMENT OF FACTS .......... 6

A. AEO Files a Charge of Discrimination Against SEO .......... 6

B. SEO Withholds Information from the EEOC .......... 7

C. AEO Files a Second Charge of Discrimination Against SEO .......... 9

D. The EEOC Issues a Subpoena for Material Relating to the Charges Against SEO .......... 9

E. The EEOC Denies SEO's Petition to Revoke or Modify the Subpoena .......... 10

III. ARGUMENT .......... 10

A. The EEOC's Investigations are Being Conducted Pursuant to a Legitimate Purpose .......... 12

B. The Subpoena Seeks Information Relevant to the EEOC's Investigations .......... 13

1. The Subpoena is not Overbroad Because it Seeks Information that Casts Light on the Allegations Against SEO .......... 14

2. A Narrower Temporal Scope Would Deprive the EEOC of Relevant Information .......... 16

C. The EEOC Does Not Possess the Information Requested in the Subpoena .......... 17

D. The EEOC Followed All Administrative Procedures in Issuing the Subpoena .......... 18

E. The Subpoena Requests Definite Information, was Issued for a Legitimate Purpose, and is not Unduly Burdensome .......... 20

1. The EEOC's Requests in the Subpoena are Adequately Described .......... 20

2. SEO Has Not Demonstrated that Producing Information Concerning Previous Law Fellowship Application Cycles Threatens its Normal Business Operations .......... 21

IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

## Cases

*EEOC v. Kan. City, Kan. Cmty. Coll.*, No. 23-202-DDC-ADM, 2024 WL 3665290 (D. Kan. Aug. 6, 2024) ... 18
*EEOC v. Kronos, Inc.*, 620 F.3d 287 (3d Cir. 2010) ... 16, 17
*EEOC v. Lockheed Martin Corp.*, 116 F.3d 110 (4th Cir. 1997) ... 13
*EEOC v. Md. Cup Corp.*, 785 F.2d 471 (4th Cir.1985) ... 22
*EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146 (S.D.N.Y. 2000) ... 22
*EEOC v. MTV Food, Inc.*, No. 23-MC-278, 2024 WL 4164507 (S.D.N.Y. Sept. 12, 2024) . 21, 22
*EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984) ... passim
*EEOC v. Sinclair*, No. 23-23547-CIV, 2024 WL 3970874 (S.D. Fla. Aug. 9, 2024) ... 21
*EEOC v. Superior Temp. Servs., Inc.*, 56 F.3d 441 (2d Cir. 1995) ... 18
*EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136 (2d Cir. 2009) ... 11
*EEOC v. Univ. of Pitt.*, 643 F.2d 983 (3d Cir.1981) ... 16
*FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3 (D.D.C. 2010) ... 22
*FTC v. Rockefeller*, 591 F.2d 182 (2d Cir. 1979) ... 22
*In re Application of Chevron Corp.*, 749 F. Supp. 2d 135 (S.D.N.Y. 2010) ... 22
*In re EEOC v. AAM Holding Corp.*, 153 F.4th 252 (2d Cir. 2025) ... 14, 15, 16, 21
*In re Evenstar Master Fund*, No. 20-MC-418, 2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ... 22
*In re McVane*, 44 F.3d 1127 (2d Cir. 1995) ... 13
*McLane Co. v. EEOC*, 581 U.S. 72 (2017) ... 11, 12, 13, 20
*NLRB v. Am. Med. Resp.*, 438 F.3d 188 (2d Cir. 2006) ... 11, 14
*United States v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676 (S.D.N.Y. 1982) ... 21
*United States v. Powell*, 379 U.S. 48 (1964) ... 11
*United States v. White*, 853 F.2d 107 (2d Cir. 1988) ... 12

## Statutes

29 U.S.C. § 161 ... 10
42 U.S.C § 2000e-2 ... 12
42 U.S.C § 2000e-3(b) ... 12
42 U.S.C. § 2000e-5(b) ... 11, 12
42 U.S.C. § 2000e-5(e)(1) ... 6
42 U.S.C. § 2000e-8(a) ... 10, 12
42 U.S.C. § 2000e-9 ... 4, 10, 19

## Other Authorities

EEOC Compliance Manual § 24.4(d) ... 19

## Regulations

29 C.F.R. § 1601.12(a) ... 18
29 C.F.R. § 1601.16(b)(1) ... 10
29 C.F.R. § 1601.16(b)(2) ... 10

29 C.F.R. § 1601.22 .................................................................................................................. 19
29 C.F.R. § 1601.7 .................................................................................................................. 6, 18

## I. PRELIMINARY STATEMENT

Petitioner Equal Employment Opportunity Commission ("EEOC" or "the Commission") brings this action to require Respondent Sponsors for Educational Opportunity ("SEO") to comply with administrative Subpoena No. DE-2026-0009, which the EEOC's Phoenix District Director, Melinda Caraballo, issued on September 9, 2026. The EEOC served Respondent with the subpoena in connection with two investigations conducted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

The investigations concern charges of discrimination filed by Americans for Equal Opportunity ("AEO") with the EEOC. The charges allege SEO engaged in discriminatory hiring and advertising while administering SEO's Law Fellowship. The first charge of discrimination, filed in 2025, alleges SEO discriminated against AEO members and other aggrieved individuals "on the basis of race, color, and national origin" as part of the 2025 Law Fellowship. Over a nine-month period, the EEOC issued five Requests for Information ("RFI"), instructing SEO to provide information about the Law Fellowship going back to January 1, 2019. SEO's responses to the RFIs were deficient; SEO refused to provide any information prior to November 2024 or after June 2025. Even after the EEOC narrowed the investigative period to January 1, 2021, to the present, SEO continued to protest the temporal scope of the RFIs.

In 2026, AEO filed a second charge of discrimination, alleging SEO "engaged in a pattern or practice of discriminatory advertisements and failing to select qualified candidates for the SEO Law Fellowship based on their race, color, national origin, religion, and sexual orientation." To conduct its investigations into AEO's charges, the EEOC issued Subpoena No. DE-2026-0009, instructing SEO to provide certain documents and information pertaining to the Law Fellowship

from January 1, 2021, to the present. SEO, however, objected to the subpoena and filed a Petition to Revoke or Modify the Subpoena, which the Commission denied on October 20, 2026.

SEO continues to improperly withhold relevant documents concerning the 2021, 2022, 2023, 2024, and 2026 Law Fellowship application cycles. The requested information is essential to the EEOC's ability to investigate whether there is reasonable cause to believe SEO engaged in unlawful discrimination. The EEOC asks this Court to enforce the subpoena by ordering SEO to produce the long-overdue information so the EEOC can complete its statutory duty to conduct these investigations.

## II. STATEMENT OF FACTS

Respondent SEO is a New York City-based 501(c)(3) organization that provides academic and professional support for aspiring legal and business professionals. This includes the SEO Law Fellowship, which provides incoming law students legal training, corporate law experience, and academic support throughout their first year of law school. The Law Fellowship consists of three core components: an intensive legal training program, a paid summer internship at one of SEO's law firm or business partners, and tutoring during law school. To be eligible for the Law Fellowship, applicants must be enrolled at an accredited law school, able to attend the training program, and eligible to work full-time during the summer preceding law school (also known as their "0L" summer) at one of Respondent's law firm or business partners.

### A. AEO Files a Charge of Discrimination Against SEO

AEO, a membership-based 501(c)(3) organization in Washington, DC, filed a third-party Charge of Discrimination on June 11, 2025 ("2025 Charge"), alleging SEO's selection process for the 2025 Law Fellowship discriminated against its members and other aggrieved individuals "on the basis of race, color, and national origin." Declaration of Melinda Caraballo Ex. 1; 29 C.F.R.

§ 1601.7 (authorizing third parties to file EEOC charges on behalf of others). According to AEO, the Law Fellowship's application process screened out certain candidates to "identify applicants who are overwhelmingly from [Respondent's] preferred racial and ethnic backgrounds." Caraballo Decl. Ex. 1 at 14. The 2025 Charge further alleges Respondent engaged in discriminatory marketing practices that "favor[] Black, Hispanic, and Native American applicants" and "deter[] applicants from disfavored racial and ethnic groups from applying." *Id.* at 13.

### B. SEO Withholds Information from the EEOC

As part of the EEOC's investigation into AEO's allegations, the EEOC issued a Request for Information ("RFI 1") on September 30, 2025, seeking evidence from Respondent relating to the 2025 Charge. Caraballo Decl. ¶ 8. RFI 1 defined the "investigative period" as "January 1, 2019 to present." *Id.* SEO responded to the EEOC on October 14, 2025, objecting to the "temporal scope" of RFI 1 and arguing the EEOC's investigative period was beyond the temporal boundaries of the Charge. *Id.* ¶ 9. Respondent reasoned that Title VII's 300-day statutory limitation period for filing a charge of discrimination meant the investigative period cannot extend beyond August 16, 2024 (300 days prior to the date AEO filed the 2025 Charge). *Id.*; 42 U.S.C. § 2000e-5(e)(1) (establishing that EEOC charges must be filed "within three hundred days after the alleged unlawful employment practice"). According to Respondent, the EEOC's investigative period includes conduct that could not legally support a finding of discrimination. *See* Caraballo Decl. ¶ 9. Instead, Respondent argued the EEOC's investigative period should be limited to the 2025 Law Fellowship application cycle: November 2024 (when applications for the 2025 Law Fellowship opened) through June 2025 (when SEO completed the selection process for the 2025 Law Fellowship). *Id.* Respondent, therefore, only produced a limited portion of the information the EEOC requested in RFI 1. *Id.*

Based on SEO's objections to the temporal scope of the EEOC's RFI and to encourage SEO to voluntarily comply with the investigation, the EEOC narrowed the investigative period for the 2025 Charge to January 1, 2021, to the present. *Id.* ¶ 10. Using this abbreviated investigative period, the EEOC issued four more RFIs to SEO on December 30, 2025 ("RFI 2"), January 5, 2026 ("RFI 3"), March 13, 2026 ("RFI 4"), and June 11, 2026 ("RFI 5"). *Id.* ¶11. However, the EEOC's two-year adjustment to the investigative period did not satisfy SEO. In its responses to RFI 2, RFI 3, RFI 4, and RFI 5, Respondent renewed its objections to the temporal scope and only provided the EEOC information concerning the 2025 Law Fellowship. *Id.* ¶ 12.

Due to Respondent's ongoing refusal to comply with the RFIs, the EEOC sent Respondent a deficiency letter on July 29, 2026, seeking a narrowed set of documents responsive to RFI 3, RFI 4, and RFI 5 that are necessary for the investigation and analysis of the 2025 Charge. *Id.* ¶ 14. The letter described the deficiencies in Respondent's responses to the RFIs and explained how the EEOC's broad investigative powers entitle the agency to certain documents in Respondent's possession going back to January 1, 2021. On August 12, 2026, Respondent responded to the deficiency letter. *Id.* ¶ 15. Although Respondent conceded that the EEOC's investigative authority permitted the agency to request information beyond Title VII's 300-day limitations period, Respondent refused—*again*—to produce documents outside of the 2025 Law Fellowship application cycle. *Id.* To justify this refusal, Respondent asserted that records predating November 2025 are not relevant to the Charge under investigation, and the burden of compiling them is not proportional to the Commission's needs. *Id.* Respondent, without evidence, claimed it would take dozens of hours and a significant cost to comply with the EEOC's RFIs. *Id.*

### C. AEO Files a Second Charge of Discrimination Against SEO

On July 24, 2026, AEO filed a second Charge of Discrimination ("2026 Charge"), alleging SEO "engaged in a pattern or practice" of discrimination by "failing to select qualified candidates for the SEO Law Fellowship," including AEO members and other aggrieved individuals "based on their race, color, national origin, religion, and sexual orientation." Caraballo Decl. Ex. 3. The 2026 Charge also alleges SEO engaged in discriminatory advertising practices to "recruit applicants from certain demographics." *Id.* According to the 2026 Charge, Respondent's discriminatory conduct transpired "most recently" on May 9, 2026, as part of the 2026 Law Fellowship application cycle. *Id.* The EEOC notified Respondent of the 2026 Charge and commenced an investigation into the allegations.

### D. The EEOC Issues a Subpoena for Material Relating to the Charges Against SEO

In light of the 2026 Charge, Respondent's ongoing objections to the temporal scope of the 2025 Charge investigation, and Respondent's failure to provide complete responses to RFI 1, RFI 2, RFI 3, RFI 4, and RFI 5, the EEOC issued Subpoena No. DE-2026-0009 to Respondent concerning both the 2025 and 2026 Charges. Caraballo Decl. Exs. 4, 5. The subpoena, which defined the investigative period as January 1, 2021, to the present, included eight requests for documentary and electronic information. Caraballo Decl. Ex. 4, Attach A. The eight requests consisted, generally, of the following:

1. Applications, review guides, and registration forms related to the Law Fellowship;
2. Documents discussing the participation of Partner Firms and Partner Companies in the Law Fellowship;
3. Documents discussing the selection and/or placement of Law Fellows at Partner Law Firms and Partner Companies;
4. Compensation records for Law Fellows;

5. Documents related to Respondent's selection policies, practices, and recruitment for Law Fellowship applicants;

6. Documents related to advertisements for the Law Fellowship;

7. Applicant data from Respondent's Airtable system; and

8. Applicant data from Respondent's Survey Monkey Apply system.

*Id.*

**E. The EEOC Denies SEO's Petition to Revoke or Modify the Subpoena**

On September 22, 2026, Respondent submitted a Petition to Revoke or Modify the Subpoena, asking the Commission to revoke the subpoena based on allegations the subpoena was procedurally deficient, overbroad, not relevant to the charges, burdensome, and would expose the personal information of non-parties. Caraballo Decl. ¶ 21. SEO asked the Commission to modify the subpoena or, in the alternative, to limit the requests to the 2025 and 2026 application cycles. *Id.* In a Determination dated October 20, 2026, the Commission denied SEO's Petition to Revoke or Modify and gave SEO seven days to provide all information and documents responsive to Subpoena No. DE-2026-0009. Caraballo Decl. Ex. 6. On October 27, 2026, SEO provided the EEOC certain documents pertaining to the 2026 Law Fellowship but did not provide a complete response to Subpoena Request No. 7. *Id.* ¶ 25. SEO, for example, excluded essential information such as the demographic information for 2026 Law Fellowship recipients. *Id.* ¶ 26. In further defiance of the subpoena, Respondent failed to provide any documents concerning the 2021, 2022, 2023, or 2024 Law Fellowship application cycles. *Id.* ¶ 27.

**III. ARGUMENT**

The EEOC maintains broad investigatory powers, including "access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . [that] is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). If a respondent

refuses to provide information to the EEOC, the EEOC may issue an administrative subpoena to compel production. 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161). To challenge an EEOC subpoena, respondents must exhaust their administrative remedies and file a petition to revoke or modify the subpoena with the EEOC. 29 C.F.R. § 1601.16(b)(1). The Commission will "either grant the petition to revoke or modify in its entirety or make a proposed determination on the petition." 29 C.F.R. § 1601.16(b)(2). If the EEOC denies a respondent's petition and the respondent still refuses to comply, the EEOC may ask a district court to enforce the subpoena. 29 U.S.C. § 161; *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017).

"A district court's role in an EEOC subpoena enforcement proceeding . . . is a straightforward one." *McLane*, 581 U.S. at 76; *see also EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) ("[A] district court's 'role in a proceeding to enforce an administrative subpoena is extremely limited.'" (quoting *NLRB v. Am. Med. Resp.*, 438 F.3d 188, 192 (2d Cir. 2006))). The Court must enforce the subpoena if the EEOC demonstrates: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [agency's] possession, and [4] that the administrative steps required by the [statute] have been followed[.]" *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *UPS*, 587 F.3d at 139 (applying the four *Powell* factors to enforce an EEOC administrative subpoena).

The EEOC's "burden of proof of its compliance with the *Powell* standards is minimal[.]" *United States v. White*, 853 F.2d 107, 111 (2d Cir. 1988) (finding that an affidavit of an agent involved in the investigation may establish the government's *prima facie* case for enforcement of an administrative subpoena). If the charge is proper and the requested material is relevant, "the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too

indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *McLane*, 581 U.S. at 77. A subpoena proceeding is not "an opportunity to test the strength of the underlying complaint." *Id.* at 76.

As discussed below, Subpoena No. DE-2026-0009 satisfies the four *Powell* factors, adequately describes the information sought, and will not disrupt SEO's operations. The Court, therefore, should enforce the subpoena and compel SEO to comply with the EEOC's requests.

**A. The EEOC's Investigations are Being Conducted Pursuant to a Legitimate Purpose**

The EEOC meets the first *Powell* factor because the investigations into SEO are being conducted pursuant to a legitimate purpose: to perform the EEOC's statutory duty to investigate charges of discrimination. *See* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed" alleging an unlawful employment practice, the EEOC "*shall* make an investigation thereof.") (emphasis added); *see also UPS*, 587 F.3d at 139 ("Under Title VII, the EEOC is *required to investigate* charges of discrimination to determine whether there is reasonable cause to believe that an employer is engaged in an unlawful employment practice[.]") (emphasis added). Here, AEO filed two charges of discrimination against SEO under Title VII, alleging widespread discrimination against its members and other aggrieved individuals relating to the selection and advertising of the Law Fellowship. *See* Carabello Decl. Exs. 1, 2. Investigations into these charges are within the EEOC's statutory authority and congressional mandate under Title VII. 42 U.S.C § 2000e-2, 3(b). Moreover, there is no evidence that the investigations seek to harass or abuse SEO. *See Powell*, 379 U.S. at 58 (describing factors that may render an administrative subpoena improper). The Court, therefore, should find the EEOC's investigations into the Law Fellowship serve a legitimate purpose.

**B. The Subpoena Seeks Information Relevant to the EEOC's Investigations**

The EEOC satisfies the second *Powell* factor because Subpoena No. DE-2026-0009 seeks information that will establish whether there is reasonable cause to believe SEO violated Title VII. *See* 42 U.S.C. § 2000e-5(b) (discussing the EEOC's "reasonable cause" standard). Title VII grants the EEOC access to any evidence that "is relevant to the charge under investigation." *Id.* § 2000e-8(a). In this context, "the term 'relevant' [should] be understood 'generously' to permit the EEOC 'access to virtually any material that might cast light on the allegations against the employer.'" *McLane*, 581 U.S. at 84 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984)). For this reason, the Second Circuit Court of Appeals has cautioned district courts against placing "too restrictive a standard of relevance" during subpoena enforcement proceedings. *See, e.g.*, *UPS*, 587 F.3d at 139 (reversing a district court's finding that subpoenaed information was not relevant to an EEOC investigation).

Rather than using the courtroom to litigate the exact parameters of the "relevance" standard, courts—including the Second Circuit—recognize that the investigating agency is best positioned to determine what is relevant to its own investigation, and the agency's appraisal of relevancy "must be accepted so long as it is not obviously wrong." *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (citation omitted); *see also EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997) ("Courts defer to an agency's own appraisal of what is relevant so long as it is not obviously wrong.") (internal quotation omitted). Here, in adjudicating SEO's Petition to Revoke or Modify, the Commission determined Subpoena No. DE-2026-0009 seeks information relevant to its investigations. *See* Carabello Decl. Ex. 6 at 10-13. Specifically, the Commission found that the subpoena is "appropriately tailored to secure relevant information" pertaining to the allegations in the charges of discrimination. *Id.* at 12. Accordingly, to the extent the Court defers

to the investigating agency, the EEOC has already determined Subpoena No. DE-26-0009 is relevant, and there is no procedural or substantive basis to find the Commission's determination incorrect, yet alone "obviously wrong." *See Am. Med. Resp.*, 438 F.3d at 193 (recognizing the court's role to "broadly interpret relevancy" in enforcing administrative subpoenas without evidence the agency erred).

1. The Subpoena is not Overbroad Because it Seeks Information that Casts Light on the Allegations Against SEO

SEO's Petition to Revoke or Modify claimed the subpoena is overbroad and seeks irrelevant information. Carabello Decl. ¶ 21. In doing so, SEO misrepresented the charges as only alleging discrimination in the 2025 and 2026 Law Fellowships, and argued that information concerning prior Fellowship years is beyond the scope of the investigation. *See id.* SEO, instead, urged the Commission to limit the subpoena to information concerning the 2025 and 2026 application cycles. *Id.* The Commission, however, declined to impose such an artificial constraint on the EEOC's investigative powers, *see* Carabello Decl. Ex. 6 at 10-13, and the Court should do the same in this enforcement action.

Indeed, the Second Circuit recently addressed a similar issue in *In re EEOC v. AAM Holding Corp.*, 153 F.4th 252 (2d Cir. 2025). There, an employee filed a charge of discrimination alleging "a pattern or practice of sexual harassment" during her employment at two New York City clubs between September 2019 to July 2021. *Id.* at 257. As part of the EEOC's investigation into the charge of discrimination, the EEOC subpoenaed pedigree information—including the name, age, sex, race, position, dates of employment, address, phone number, and email addresses—for a four-year period: January 2019 to November 2023. *Id.* at 262. Respondents objected, arguing that the temporal scope should be limited to the employee's period of employment. *Id.* The Second Circuit outright rejected this argument, emphasizing the Supreme

Court's position that an EEOC charge is not "a substantive constraint on the [EEOC's] investigative authority" and noting that the charge included "broad allegations of a widespread pattern or practice of sexual harassment." *Id.* at 262; *Shell Oil*, 466 U.S. at 75 (1984). The Second Circuit reasoned it was sensible to conclude that employees who worked for respondent "at or around the time [charging party] worked there are reasonably likely to have information about the alleged discriminatory practices" and that the evidence "may be relevant to the extent it is likely to be helpful in uncovering other relevant evidence." *AAM Holding Corp.*, 153 F.4th at 262. The court, therefore, rejected the respondents' objection to the temporal scope of the subpoena, concluding that the respondents "misunderstand the relationship between an individual charge and the EEOC's subpoena authority." *Id.*

Here, SEO's position suffers from the same misunderstanding. Even though the individual charges against SEO reference specific instances of discrimination against specific applicants for the 2025 and 2026 Law Fellowship, that specificity does not constrain the EEOC's investigative scope. This is especially true where, as here, a charge alleges widespread discrimination going back several years. *See id.* at 262 ("Especially in light of our generous view of relevance in the context of EEOC investigations, we are reluctant to condemn a subpoena seeking pedigree information for employees at specific locations where an employee's charge alleges widespread discrimination."). The 2025 Charge describes AEO members who were "rejected from the Fellowship in prior years because they were not part of the minority groups preferred by SEO," and the 2026 Charge alleges a "pattern or practice" of discrimination in the Law Fellowship as a whole. Caraballo Decl. Exs. 1 at 4, 3 at 1. Information concerning the 2021-2024 Law Fellowship application cycles is, therefore, relevant "to the extent it is likely to be helpful in uncovering other

relevant evidence" and "insofar as it permits the EEOC to identify [others] who may have relevant information" concerning the alleged discrimination. *AAM Holding Corp.*, 153 F.4th at 262.

To sidestep the court's holding in *AAM Holding Corp.*, SEO's Petition to Revoke or Modify argued that the information about prior application cycles is not comparable to the 2024 and 2025 Law Fellowship application cycles because they involve different applicants, different reviewers, and different selection criteria. Caraballo Decl. ¶ 21. But it is precisely for that reason that the information is relevant: knowing who participated in prior fellowship cycles—including in selecting and advertising the Law Fellowship—will help the EEOC identify evidence of any pattern or practice of discrimination at SEO. Just as the Second Circuit noted in *AAM Holding Corp.*, material from "at or around the time" of the alleged discrimination is "reasonably likely to have information about the alleged discriminatory practices." 153 F.4th at 262; *see EEOC v. Kronos, Inc.*, 620 F.3d 287, 298 (3d Cir. 2010) ("The EEOC is entitled to information that 'may provide a useful context' for evaluating employment practices under investigation, in particular when such information constitutes comparison data." (quoting *EEOC v. Univ. of Pitt.*, 643 F.2d 983, 985–86 (3d Cir.1981))). Here, the applicant data, law firm participation records, application rubrics, and other subpoenaed information will help the EEOC determine whether there is reasonable cause to believe SEO discriminated against AEO's members and other aggrieved individuals on a widespread basis and whether SEO engaged in a pattern or practice of discrimination.

2. A Narrower Temporal Scope Would Deprive the EEOC of Relevant Information

SEO's proposed temporal restrictions would unlawfully deny the EEOC access to relevant evidence and impair its ability to determine whether SEO engaged in a pattern or practice of discrimination. In *Shell Oil*, the Supreme Court opposed efforts to "undercut" the EEOC's

investigative authority, emphasizing "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." 466 U.S. at 69. Notably, the EEOC's subpoena is based on more than suspicion of discriminatory conduct; the EEOC has already unearthed evidence relevant to discrimination in the Law Fellowship going as far back as 2015. *See* Caraballo Decl. ¶ 13. This is based, in part, on a 2025 Partner Registration Form in which an AmLaw 50 law firm made a discriminatory race-based request for SEO to provide the law firm a certain number of African American Law Fellows. Caraballo Decl. Ex. 2. The evidence suggests SEO complied with the law firm's race-based requests for the 2025 Law Fellowship and in prior years. Caraballo Decl. Ex. 6 at 12. The information sought in the subpoena is relevant to whether SEO's actions amounted to a "pattern or practice" of discrimination. *See Kronos*, 620 F.3d at 297 (3d Cir. 2010) (reversing the district court for applying "too restrictive a standard of relevance" in narrowing the temporal scope of a subpoena). The Court, therefore, should enforce Subpoena No. DE-2026-0009 to ensure the EEOC obtains the necessary information to achieve its statutory duty to investigate the charges of discrimination against SEO.

Accordingly, the EEOC has met the second *Powell* factor to establish that the information in Subpoena No. DE-2026-0009—including the applicant data, partner registration forms, and Law Fellowship advertisements—are relevant to the charges of discrimination against SEO.

**C. The EEOC Does Not Possess the Information Requested in the Subpoena**

The EEOC satisfies the third prong of the *Powell* analysis because the EEOC does not possess the information in Subpoena No. DE-2026-0009. From the outset of the EEOC's investigations, SEO has refused to provide the EEOC documents, materials, or information pertaining to the 2021-2024 Law Fellowship application cycles. To the extent the subpoena encompasses documents SEO provided the EEOC concerning the 2025 and 2026 application

cycles, the subpoena specifically—and repeatedly—instructs SEO to "not provide duplicate information previously provided to the EEOC." Caraballo Decl. Ex. 4, Attach A at 1-2. While it is true that a small portion of the information sought in the subpoena may be publicly available—specifically, Subpoena Request No. 6 for "all Documents or records reflecting or related to advertisements for the SEO Law Fellowship during the relevant time period"— the EEOC has authority to require respondents to produce and compile publicly available information that is necessary to an investigation. *See EEOC v. Kan. City, Kan. Cmty. Coll.*, No. 23-202-DDC-ADM, 2024 WL 3665290, at *9 (D. Kan. Aug. 6, 2024) (rejecting an employer's argument that the EEOC cannot subpoena publicly available information). Moreover, the EEOC does not know whether *all* responsive documents are publicly available. For example, SEO may have disseminated advertising materials through non-public channels, such as email correspondence with colleges and universities, as part of SEO's recruitment efforts. The EEOC, therefore, satisfies the third *Powell* factor, because the agency does not already possess the information requested in Subpoena No. DE-26-0009.

**D. The EEOC Followed All Administrative Procedures in Issuing the Subpoena**

The EEOC meets the fourth *Powell* factor because the Commission followed all administrative procedures required to issue Subpoena No. DE-2026-0009, thereby providing this Court with jurisdiction to enforce the Subpoena. The administrative procedures leading up to a subpoena enforcement under Title VII are minimal: to enforce a subpoena in federal court only requires the existence of a valid charge of discrimination. *See Shell Oil*, 466 U.S. at 65 (discussing the EEOC's "authority to request judicial enforcement of its subpoenas"); *EEOC v. Superior Temp. Servs., Inc.*, 56 F.3d 441, 445 (2d Cir. 1995) (describing the administrative prerequisites for the Commission to subpoena material from a respondent). To be valid, a charge must include

information about the person making the charge, information about the respondent, the approximate number of respondent's employees, a statement disclosing whether the charge has been cross-filed with a state or local agency, and a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a). Where, as here, a third party files a charge on behalf of others, the "written charge need not identify by name the person on whose behalf it is made." 29 C.F.R. § 1601.7. Instead, the person making the charge "must provide the Commission with the name and contact information of the person on whose behalf the charge is made." *Id.* After the EEOC verifies the aggrieved individual authorized the third party to file a charge of discrimination, the EEOC must "keep his or her identity confidential." *Id.*

Here, both the 2025 and 2026 Charges are valid. The Commission timely notified SEO of the Charges, and both Charges identify the Respondent, approximate the number of people employed by Respondent, confirm cross-filing with state and/or local agencies, and provide facts sufficient to constitute an unlawful employment practice. *See* Caraballo Decl. Exs. 1, 3; *see Shell Oil*, 466 U.S. at 72-73 (describing the type of information a charge must include to allege a pattern or practice of discrimination). Moreover, as the third party filing the charge of discrimination, AEO provided the EEOC the names and contact information of the people on whose behalf they filed the charges. Caraballo Decl. ¶¶ 7, 17.

Once an employer refuses to obey a subpoena, there are no other prerequisites for subpoena enforcement. Although the EEOC favors collaborative efforts to achieve voluntary compliance with an investigation—including requests for evidence, deficiency letters, and conferrals—those means are not required where, as here, a respondent indicates an unwillingness to fully cooperate with an investigation. *See* EEOC Compliance Manual § 24.4(d) ("Efforts to obtain evidence by

other methods before issuing a subpoena are not required when there is a reasonable basis to conclude that the respondent will resist the investigation . . . ."). Based on SEO's refusal to comply with the five RFIs issued in connection with the 2025 Charge, the EEOC reasonably believed SEO would not comply with RFIs related to the 2026 Charge and decided to proceed directly to a subpoena. Caraballo Decl. ¶ 18. Moreover, this Court has jurisdiction to enforce the subpoena because SEO is registered and conducts business in New York, New York. *See* 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161(2)) (affording jurisdiction to federal courts where Respondent "is found or resides or transacts business").

The Subpoena, therefore, satisfies the fourth *Powell* factor because all administrative and jurisdictional prerequisites to enforcement have been met.

**E. The Subpoena Requests Definite Information, was Issued for a Legitimate Purpose, and is not Unduly Burdensome**

Even where, as here, the EEOC has satisfied the four *Powell* factors, courts will not enforce an administrative subpoena if it "is too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome." *McLane*, 581 U.S. at 77. As discussed above, the EEOC issued Subpoena DE-2026-0009 for a proper purpose: to fulfill the EEOC's statutory mandate to investigate charges of discrimination under Title VII. The subpoena, moreover, is neither too indefinite nor unduly burdensome.

1. <u>The EEOC's Requests in the Subpoena are Adequately Described</u>

For an administrative subpoena to be adequately described, "the information or materials requested by the agency must be sufficiently specific." *EEOC v. Sinclair*, No. 23-23547-CIV, 2024 WL 3970874, at *4 (S.D. Fla. Aug. 9, 2024) ; *see United States v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676, 679 (S.D.N.Y. 1982) (discussing the validity of administrative subpoenas). Here, the subpoena is specific, detailed, and precise. The subpoena requests two types of material:

documents and electronic data from a defined timeframe ("January 2021 to present"). Caraballo Decl. Ex. 4, Attach. A. The documents the EEOC seeks are specifically defined in six detailed requests, instructing SEO to provide concrete documents pertaining to: the application process (e.g., applications, review guides, scoring rubrics); SEO's Partner Law Firms and Partner Companies (e.g., SEO communications concerning selection criteria and placement decisions); and SEO's recruitment and advertising materials. *Id.* at 1-4. The two requests for electronic data instruct SEO to provide specific data fields from two of its electronic databases: Airtable and Survey Monkey Apply. *Id.* at 2-8. These requests are similar to the types of requests in EEOC subpoenas that courts typically enforce. *See, e.g.*, *AAM Holding Corp.*, 153 F.4th at 261 (enforcing EEOC subpoena for "pedigree information," such as the name, age, sex, race, position, employment dates, and contact information for employees over a defined period of nearly four years); *EEOC v. MTV Food, Inc.*, No. 23-MC-278, 2024 WL 4164507, at *4 (S.D.N.Y. Sept. 12, 2024) (enforcing an EEOC subpoena instructing respondent to provide an Excel spreadsheet containing employee information—including names, birthdates, sexes, races, hire dates, job titles, and more—over a four year period). Here too, the Court should find the subpoena adequately describes both substantive and temporal limitations to be enforceable.

2. <u>SEO Has Not Demonstrated that Producing Information Concerning Previous Law Fellowship Application Cycles Threatens its Normal Business Operations</u>

To demonstrate a subpoena is unduly burdensome, the respondent must establish that "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979) (citation omitted). "In assessing the burdensomeness of a subpoena the Court must show 'that the cost of gathering this information is unduly burdensome in light of the company's normal operating costs.'" *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 161 (S.D.N.Y. 2000) (quoting *EEOC v. Md. Cup Corp.*, 785 F.2d

471, 479 (4th Cir.1985)). "'Inconvenience alone is inadequate' to demonstrate undue burden." *MTV Food, Inc.*, 2024 WL 4164507, at *6 (quoting *In re Evenstar Master Fund*, No. 20-MC-418, 2021 WL 3829991, at *13 (S.D.N.Y. Aug. 27, 2021)).

Respondent's Petition to Revoke or Modify did not present sufficient evidence to establish it would be unduly burdensome to provide the information listed in Subpoena No. DE-2026-0009. Instead, without evidence, Respondent claimed that its limited administrative resources make it unduly burdensome to review, compile, and produce the subpoenaed information. Caraballo Decl. ¶ 21. The EEOC recognizes that SEO will have to commit a limited amount of resources to respond to the subpoena, but "some burden on the subpoenaed party is to be expected." *FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 8 (D.D.C. 2010). Here, Respondent did not provide specific information concerning the number of hours it would take to collect the requested information, the amount of money it would cost, or the number of individuals required to perform the task. Without more detailed quantifiable metrics, SEO is unable to meet its burden to demonstrate burdensomeness. *See In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) (rejecting, in the context of a motion to quash, "somewhat conclusory" claims of undue burden when "no serious effort has been made to quantify the amount of time or effort that would be required" to respond to a subpoena).

Notably, throughout the course of these investigations, the EEOC has taken steps to lessen the burden on SEO. The EEOC, for instance, initially instructed SEO to provide evidence going back to January 1, 2019. *See* Caraballo Decl. ¶ 8. Now, the EEOC only seeks material going back to January 1, 2021. *Id.* ¶ 10. This two-year adjustment reduces the burden placed on SEO to collect and compile information. Moreover, concerning the electronically stored applicant data, the EEOC intentionally tailored its request to correspond with the data fields in SEO's electronic databases.

Furthermore, even though SEO failed to fully respond to RFI 1 and RFI 2, the subpoena only seeks a subset of information from RFI 3, RFI 4, and RFI 5. *Id.* ¶ 19. Notably, it only took SEO a few weeks to provide the EEOC with the same data concerning the 2025 and 2026 Law Fellowship application cycles. It was not unduly burdensome then, and it is not unduly burdensome now, especially without any meaningful evidence to establish the burdensomeness of the request on SEO's business operations.

## IV. CONCLUSION

Subpoena DE-2026-0009 seeks information relevant to valid investigations under Title VII. For the reasons set forth above, the EEOC has satisfied the *Powell* factors and adequately identified the information it seeks. SEO, moreover, has not provided sufficient evidence to demonstrate the subpoena poses an undue burden on its operations. Accordingly, the EEOC respectfully requests the Court grant its Petition and issue an Order:

a) Compelling Respondent SEO, on a date fixed by this Court, to produce all information responsive to Subpoena No. DE-2026-0009 issued by the EEOC on September 9, 2026.

b) Granting Petitioner EEOC its costs expended in this action; and

c) Ordering any other such relief as may be necessary and appropriate.

Dated: November 16, 2026

Respectfully submitted,

CHRISTOPHER LAGE
Deputy General Counsel

MARY JO O'NEILL
Regional Attorney

LAUREN JAECKEL
Assistant Regional Attorney

*/s/ Mary Jo O'Neill*
Mary Jo O'Neill
Regional Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
3300 North Central Ave., Suite 690
Phoenix, AZ 85012
mary.oneill@eeoc.gov
(602) 661-0027

**WORD COUNT CERTIFICATE**

I hereby certify that the above Memorandum of Law in Support of Petition to Enforce Administrative Subpoena is 5,749 words and complies with the word limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

*/s/ Mary Jo O'Neill*
Mary Jo O'Neill
Regional Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
3300 North Central Ave., Suite 690
Phoenix, AZ 85012
mary.oneill@eeoc.gov
(602) 661-0027